## Springfield Consolidated Railway Co v. Libby Hoeffner.

1. CORPORATIONS—*Degree of Accuracy Required in Use of Corporate Name.*—Where the name of a corporation consists of several words, the omission of some of them, in proof identifying a defendant, is not important if it is evident who is intended.

2. EVIDENCE—*Of Facts Proved by Other Evidence, as Error.*—In a suit for personal injuries, the plaintiff's affirmative answer to an inquiry as to whether she was hurt or not, made at the time of the injury, was admitted. The fact that she was hurt was abundantly proved by other evidence. *Held*, that the admission of such evidence furnished no ground for complaint.

3. INSTRUCTIONS—*Summarizing the Case.*—An instruction summarizing a case, and telling the jury that if, from a consideration of all the evidence, they find the facts as stated, plaintiff is entitled to recover, is not subject to objection as ignoring the theory of the defense, when it embraces all the elements essential to a recovery.

4. DAMAGES—*For Personal Injuries, to be Assessed in the Judgment of the Jury Under the Evidence.*—The damages in a suit for personal injuries are not susceptible of exact proof and must be left to the judgment of the jury under the evidence, and an instruction in such a case telling the jury that if they find the defendant guilty they should consider certain stated elements of damage, if proved, and assess the amount at " such sum as in their judgment will compensate," etc., is not open to the objection that the plaintiff is only entitled to recover such damages as the evidence warrants.

**Trespass on the Case,** for personal injuries. Appeal from the Circuit Court of Sangamon County; the Hon. JAMES A. CREIGHTON, Judge, presiding. Heard in this court at the May term, 1896. Affirmed. Opinion filed June 16, 1897.

Wilson & Warren and Palmer, Shutt, Drennan & Lester, attorneys for appellant.

E. E. Bone and Orendorff & Patton, attorneys for appellee.

Mr. Justice Pleasants delivered the opinion of the Court.

This was an action on the case for personal injury, brought by appellee. The trial on the general issue resulted in a verdict for $2,441 damages. Whereupon defendant entered its motion to suspend further proceedings in the case, and for leave to file a plea of misnomer of plaintiff, and to withdraw the plea of the general issue for that purpose—which was denied, as was also its motion for a new trial—and judgment was rendered on the verdict. From that judgment this appeal was taken.

Plaintiff and her brother-in-law, John Hoeffner, were the only witnesses who claimed to know how the alleged injury was caused. According to their testimony, on the evening of September 27, 1895, they together attended a show then on exhibition at the Springfield Fair Grounds. About half past nine o'clock they there took an open trailer, following and attached to a closed car of the defendant company, used as a motor, to return. When the conductor came to take up their fare she distinctly notified him that she wished to get off at the crossing of Ninth and Reynolds streets, and requested him to stop the car there to enable her to do so; and again, when about four blocks from that crossing he asked her where it was she had said she would get off, she told him "Ninth and Reynolds." On reaching the crossing they slowed up and her brother-in-law got off on the north side of the street. As the car continued to slow she arose and prepared to alight promptly when it should stop on the south side.

She stood with one foot in the car and the other on the foot-board holding on to the brass arm of the seat as it seemed about to stop and she was about to alight, when,

without stopping, it started forward with a sudden and violent jerk, breaking her hold, throwing her off upon her back, and so causing the injuries complained of, the most serious of which appears to have been to the spine. Her brother-in-law went to her and asked if she was hurt, to which, over objection, she answered simply "yes." It was with great difficulty that she got to her home—some four blocks distant—where she immediately went to bed and sent for her family physician, who came at about eleven o'clock, and upon examination ascertained, and on the trial testified, that she was in fact seriously hurt.

Her right to recover was denied on the proposition asserted, that there was no proof that the accident occurred or the injury, if any, was done on the line of defendant's road or by the act of its servants.

On that ground, if maintained, it was of course unnecessary to offer any evidence in contradiction of plaintiff's allegations of due care on her part or negligence on that of the defendant. Some, however, was introduced, to prove an admission by her soon after the accident, that she intentionally stepped or jumped off the car on the north side of the cross street while it was in motion, and with the understanding that according to the rule and custom it would not stop until it reached the south side; but it was denied by her, and the jury appears to have given the greater credit to her statement.

Both the abstract and the record show that plaintiff testified that on the occasion in question she was a passenger "on a street car of the Consolidated Street Railway Company," and John Hoeffner, that he was a passenger "on a street car of the Springfield Consolidated Railway." She omitted the word "Springfield," which is the first, and he the word "Company," which is the last in the name of the defendant.

In the statement of facts contained in the argument for appellant, it is said, after giving the name in full, that she testified that she and her brother-in-law boarded an open trailer of the "street railway," and that he "testified the

same as plaintiff as to the boarding of the car;" and no other fact or reason is stated for the claim that there was no proof that the accident, if any, occurred on defendant's line. The witnesses named testified alike that they were together on the same car; that it was a street car, and on the line that crossed Reynolds by Ninth street. That appellant's cars, on the night of September 27, 1895, were running with open trailers on that line, was fully proved and conceded. These facts, with the name as stated, were sufficient, notwithstanding the omissions in the latter, to identify the defendant. Board of Education v. Greenebaum, 39 Ill. 614; Chadsey v. McCreery, 27 Id. 253; O'Connell v. Lamb, 63 Ill. App. 652. In view of this evidence the court properly refused to instruct the jury absolutely to find for the defendant.

It is said that defendant produced all of the conductors who served open trailer cars upon the Fair Ground line on the night in question, and that neither the plaintiff nor her brother-in-law was able to recognize among them the one who served on their car at the time of the alleged accident; and that each of those conductors testified that no such accident occurred on the car he served, so far as he knew. Their proper place on the car was generally the rear platform, and they occupied it except when duty, in collecting fares and assisting at the brake, called them forward; and there were two arc lights at the crossing.

Before these conductors were introduced, plaintiff and Hoeffner had stated that they could not give any particular description of the one on their car, nor be able to recognize him, because they had no occasion to notice and did not notice him particularly at the time. More than four months had elapsed since they saw him. Hoeffner was not then a resident of the city. They merely observed, according to their recollection, that he was rather a short man and wore a conductor's uniform. When lined up in court we may presume that they were bareheaded and in common but various styles of clothing. The inability of the witnesses under the circumstances to pick him out of a

dozen or more, if he was among them, would hardly tend to discredit their testimony as to the principal facts, in respect to which their senses could not have been deceived nor their memory at fault.

The evidence, however, does not make it clear that he was among them, but rather that one or more of those on the service that night were not produced. If he was present and testified that no such accident occurred on his car to his knowledge, the jury might well have believed from the evidence that it nevertheless did occur, and substantially as charged, though without his knowledge. For if, as the uncontradicted evidence is, the car was slowing from the north to the south side of Reynolds street, as it would if a lady passenger was to get off there, and when at its slowest, a few feet south of the south sidewalk, it suddenly started with a violent jerk, the inference from the testimony of the conductors would be that during all that time he was on the forward platform operating the brake that slowed it, and that the start and jerk instantly followed his letting it off; so that at the moment of such an accident at the middle or back part of the car caused by that jerk, he was where he naturally would not have seen it, and so occupied that he probably could not. From that moment he was carried with increased and increasing speed away from the scene of its occurrence. It further appears without contradiction that Hoeffner, on getting out on the north side of the street, followed the slowing car, and though not more than ten feet from the plaintiff when she was thrown out, she was standing up when he got to her. Had the conductor returning to his place seen and recognized her as the lady who was to get off at Ninth and Reynolds, he would have supposed she had gotten off safely and so given no further thought to the matter.

Nobody contradicted the evidence that she went to the Springfield Fair Grounds, on the evening in question, a healthy, strong and active woman, about thirty-six years of age. The distance was too far to walk. Residing on East Reynolds street, about four blocks from Ninth, appellant's

line of street cars was the one most convenient for her purpose. On her return she arrived at the Reynolds crossing about ten o'clock. When she left it there she was still sound and well. In leaving it she fell upon her back, and though able to get upon her feet almost instantly, appeared unable even with assistance to walk the short distance to her home. Hoeffner said he had almost literally to drag her, and it was with great difficulty that he got her home. There she immediately went to bed. Her physician, having been called by telephone, came at about eleven o'clock. He found her in bed complaining of pain in her hand, stomach and back, with tingling or numbness in the extremities, and apparently suffering so intensely that he administered morphine twice by hypodermic injection, and remained with her three hours. In the forenoon of the following day he called again and found her still in bed and suffering from pain, though not so much, being under the influence of opiates. She complained of her back and had told him of her fall, to which she attributed the pain there. Upon examination he found two black and blue spots on the lower part, a little to the left of the spinal column. He saw her at her house afterward on October 3d, 10th, 31st, and November 4th—six visits—and from time to time at his office thereafter until January 18, 1896, when he made his last prescription for her.

Under his treatment there was some improvement as to the pain, generally, though at times it recurred with much severity, and if there was any in the condition of the spinal chord, it was slight and very slow. She was bed-fast for about ten days, and thereafter up and down, according to the degree of her pain in moving about or sitting up. On January 18th, because the irritation had not yielded to the treatment with belladonna, ergot, and some bromides, followed by tonics of quinine, iron and strychnia, he advised a fly-blister for the two points in the spine that were espe_cially sensitive and painful, and in case they failed to help her, the use of the electric battery. He had no doubt she was suffering from spinal injury caused by the shock of her fall.

A few days before the trial, which was on January 30, 1896, she consulted another physician, Dr. Walter Ryan, of fourteen years' practice, who, upon examination by pressure and by standing her with her feet together and her eyes closed (which discovered what he called a lack of co-ordination, indicating nervous disturbance), concluded that there was spinal trouble, but as he had only her statement in addition to these tests, was unable to say positively whether it was simply irritation, which would disappear in time, or inflammation of the chord, tending to increase and to produce atrophy of the muscles and result in total disability. She showed excessive sensitiveness at several points along the column, and complained of tingling and numbness in her hands and feet.

These symptoms, so long continued, with so little abatement under active treatment, and the testimony of the plaintiff, her step-daughter and neighbors as to her condition, afford reasonable ground for apprehension that she is to be a lifelong sufferer from physical disability and severe pain.

In the evidence relating to the cause and manner of her injury, there can hardly be said to have been any conflict, and the verdict was, in our judgment, so clearly warranted by it, that any error of the court sufficient to require a reversal of the judgment must have been very extraordinary. We discover in the record none that was at all substantial.

It is said the court, after trial and verdict on the general issue, should have stayed the proceedings and allowed the defendant to withdraw that plea and interpose a plea of misnomer of plaintiff. Of course counsel knew and admit here that this would have been a novelty in practice, but insist that it would have been justified and should have been allowed under the peculiar facts in this case. Yet the affidavits filed in support of the motion disclose and allege facts which the court could see were a sufficient answer to the plea offered. Upon those affidavits, the motion would have been entitled to no favor if it had been made within

an hour after the general issue was filed.  After trial and verdict on that plea, it was not only against the rule, but absolutely without a precedent.

Again, it is said the court erred in admitting plaintiff's answer to Hoeffner's question, which was, whether she was hurt.  It was asked on the spot and almost at the instant of her fall.  The court said she might answer generally, limiting her to the question, and forbidding all particulars; and her answer was in one word, " yes."

It imputed no negligence to the defendant and was not " a history or part of a history of a completed past affair," but a statement of an existing fact.  She was a witness on the trial and subjected to an exhaustive cross-examination as to how it occurred.  That she was in fact hurt was otherwise abundantly proved, and her simple statement of it without the connections otherwise fully and properly made, being entirely useless and harmless as evidence, does not seem to be within the rule cited from Chicago W. D. Ry. Co. v. Becker, 128 Ill. 545, and repeated in Ohio & M. Ry. Co. v. Cullison, 40 Ill. App. 72.

Complaint is made of the first instruction given for plaintiff on the general ground that it summarizes the evidence on one side, omitting that of the other and wholly ignoring the theory of the defense; and was therefore such as was clearly condemned in Pennsylvania Co. v. Stoelke, Adm'r, 104 Ill. 205.

We think the rule as stated in that case (with somewhat less of clearness and discrimination than is desirable) does not apply here.  The instruction in this case was quite lengthy and need not be copied.  It does not refer to any witness or evidence particularly, but embodies conclusions " from all the evidence," which are hypothetically set forth and include every element of the case alleged in the declaration and entitling her to a recovery.  Such a summary did not ignore any antagonistic theory, fact or evidence, but hypothetically and necessarily negatived them.  The theory of the defense here was that plaintiff was not injured on a car or by the act of any servant of the defendant.  An instruc-

tion that if the jury believed from all the evidence that plaintiff at the time of the injury was a passenger on a car of the defendant (with other facts required to make out her case as alleged), they should find the issue for her, unless they further believed from all the evidence that at that time she was not on a car of the defendant, would be an absurdity. This general objection to the form used is therefore groundless. City of Chicago v. Schmidt, Adm'r, 107 Ill. 186; T. H. & I. R. R. Co. v. Eggmann, 159 Id. 550.

Other objections of different parts or phrases of the instruction are briefly stated but not argued, and we do not regard them as of sufficient importance or plausibility to discuss.

. The fourth instruction for plaintiff tells the jury that if they find the defendant guilty they should consider certain elements of damage stated, if proved, and assess the amount "in such sum as in their judgment will compensate the plaintiff for such injury, pain and suffering;" and the objection thereto is that she is only entitled to recover "such damages as the evidence warrants."

This is a case for actual and not merely nominal damages, and we think the "evidence warrants" such as are fairly compensatory, which, because not susceptible of exact proof, must be left to the judgment of the jury, upon that evidence.

Perceiving no substantial error in the record, the judgment of the Circuit Court will be affirmed.